IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

RENEE L. TREON                                                                                    PLAINTIFF

VS.                                        CASE NO. 4:16CV00725 PSH

NANCY A. BERRYHILL, Acting Commissioner,
   Social Security Administration                                                DEFENDANT

**ORDER**

Plaintiff Renee L. Treon ("Treon"), in her appeal of the final decision of the Commissioner of the Social Security Administration (defendant "Berryhill") to deny her claim for Disability Insurance benefits (DIB) and supplemental security income (SSI), contends the Administrative Law Judge ("ALJ") erred in the following ways: (1) by finding, at Step 1 of the sequential evaluation, that she engaged in substantial gainful activity from April 1, 2010, through March 14, 2014; (2) by finding, at Step 2, that substance abuse disorder was a severe impairment; (3) by failing to find she met any of the Listings; (4) by performing a deficient credibility analysis; (5) by concluding she had residual functional capacity ("RFC") which was not supported by substantial evidence; and (6) by failing to fully and fairly develop the record. The parties have ably summarized the medical records and the testimony given at the administrative hearing conducted on June 2, 2015. (Tr. 32-68). The Court has carefully reviewed the record to determine whether there is substantial evidence in the administrative record to support Berryhill's decision. 42 U.S.C. § 405(g). The relevant period under consideration is from June 10, 2009, the date of alleged onset, through July 1, 2015, when the ALJ

1

ruled against Treon.

*The Administrative Hearing:*

Treon was 36 years old with a high school education at the time of the administrative hearing. Her alleged onset date of June 10, 2009, was significant to her because she was hospitalized due to an overdose with self-cutting episode. Treon testified to last working in March 2014, and to attempting to work in numerous jobs,[1] without long term success, from June 10, 2009, onward. Citing treatment beginning in 2003, Treon stated she could not work due to mental impairments which resulted in being hospitalized ten times since 2009. At the time of the administrative hearing, Treon said she was seeing a therapist every two weeks and a psychologist monthly. According to Treon, she takes thyroid medication, Seroquel for bipolar condition, Fetsima for depression, and Valium for anxiety. Treon indicated these medications change often. Her hospitalizations, including stints in 2013, 2014, and 2015, were "all for the same thing" – self-harm, suicide attempts, and cutting. (Tr. 45). Treon testified she hears voices, sees things, and engages in impulsive behaviors. She acknowledged substance abuse in the past (methamphetamine use until 9 years prior) and stated she was sexually abused as a child. She described her struggles with mental impairments as daily. (Tr. 35-61).

John Massey ("Massey"), a vocational expert, testified. The ALJ posed a hypothetical question to Massey, asking him to assume a worker of Treon's age, education, and experience, who could perform light work but avoid concentrated exposure to dusts, odors, gasses, and similar pulmonary irritants, and would be limited to simple, routine, repetitive tasks in a setting where

---

[1] Treon identified the following jobs attempted during the relevant period: cashier, deli clerk, forklift driver, hair stylist, and receptionist. (Tr. 39).

interpersonal contact was incidental to the work performed, and where supervision was simple, direct, and concrete. Massey stated such a worker could not perform any of Treon's past relevant work, but could perform other jobs, such as maid, routing clerk, or labeler. A second hypothetical question was posed, assuming the same parameters as in the first hypothetical but adding the restriction that the worker would need frequent unscheduled rest periods. Massey testified that such a worker could not perform any jobs in the national economy. A third hypothetical question included the restriction that the worker could not appropriately respond to work changes. A fourth hypothetical question included the restriction that the worker could not interact appropriately with co-workers, supervisors, and the general public. Massey indicated the hypothetical worker described in the third and fourth questions would not be capable of performing work in the national economy. (Tr. 61-66). Finally, when was asked the significance of a GAF score of 47, Massey stated a person with such a rating would generally "have very few or no friends, tend to isolate themselves and they basically are unable to keep a job." (Tr. 67).

*ALJ's Decision:*

In his July 1, 2015, decision, the ALJ determined Treon had engaged in substantial gainful activity from April 1, 2010, through March 14, 2014. Severe impairments found by the ALJ were thyroid disorder, asthma, gastritis, obesity, affective disorder, personality disorder, anxiety, and substance abuse disorder. The ALJ found Treon did not meet any Listing, and specifically mentioned Listings 12.04, 12.06, 12.08, and 12.09. The ALJ considered the "paragraph B" criteria, finding Treon had moderate limitations in activities of daily living, in social functioning, and with regard to concentration, persistence, or pace. In addition, the ALJ found Treon suffered from one to two episodes of decompensation. In assessing the "paragraph B" criteria the ALJ refers to Treon

3

as "he" on numerous occasions. Nevertheless, we assume the ALJ was referring to Treon.

The ALJ determined Treon had the RFC to perform light work with restrictions which mirrored those contained in the first hypothetical question posed to Massey. This RFC formulation was based, in part, upon the ALJ's determination that Treon was "not entirely credible." (Tr. 19). The ALJ cited the objective medical evidence, daily activities, and noncompliance as factors influencing the discounting of Treon's testimony. The ALJ discussed the opinion of state agency physicians Drs. Payne and Lauster that Treon could perform work at the medium exertional level, and assigned these opinions "little weight." (Tr. 23). State agency psychologists Mourot and Simon, on the other hand, were granted "great weight" in opining that Treon could perform simple, repetitive, one to two step tasks, with limited public or interpersonal contact. (Tr. 23). The ALJ addressed Treon's GAF scores, which ranged from 11 to 60, assigning these scores little weight as they amounted only to a snapshot of her ability to function at the particular time of the assessment. Ultimately, the ALJ relied upon Massey's testimony and found Treon capable of performing work in the national economy. Accordingly, the ALJ concluded Treon was not disabled. (Tr. 12-26).

**Credibility Assessment and RFC:**

In her brief, Berryhill notes that Treon's claims 4 and 5 overlap. As a result, Berryhill responds to these claims in a single argument. We agree with that approach, as the RFC determination is founded upon the ALJ's credibility analysis. Treon's argument regarding the credibility ruling and the resulting RFC finding is meritorious, and the case must be remanded.

The ALJ reviewed the objective medical records in making his ALJ credibility ruling. However, the ALJ's observations regarding these records fails to capture Treon's medical condition during the relevant period. The ALJ repeatedly focuses on general items in the medical records.

4

For example, the ALJ notes thirteen instances where a medical care provider recorded an assessment of Treon's eye contact. (Six times Treon was noted to have average eye contact, five times it was noted to be good, and her eye contact was once noted to be fair, and once to be adequate.) (Tr. 8-10). The ALJ also makes numerous mentions of medical care providers' observations on other general matters, such as notations that Treon was adequately groomed, her speech was normal, her demeanor was average, or her memory was intact. We find error in the ALJ's analysis of the medical records for two reasons. First, the focus on these general observations is so great that it obscures the bigger picture that Treon repeatedly was hospitalized during the relevant period. Indeed, some of the normal findings quoted by the ALJ occurred when Treon was being discharged from hospitalizations, which is a point at which normal findings would be expected. It is not enough to mention medical records and highlight general findings – the ALJ must fairly assess the medical records and assign importance to those events which merit discussion. Second, the cited findings, e.g., eye contact and grooming, are not as helpful in determining one's ability to perform work in the national economy as are other factors, including a claimant's ability to consistently attend work. In summary, the ALJ failed to adequately weigh the objective medical evidence, and the resulting credibility determination is not supported by substantial evidence. It follows that the RFC determination, built upon the credibility finding, is also unsupported by substantial evidence.[2]

    We remand for further proceedings consistent with this Order.

    IT IS THEREFORE ORDERED that the final decision of the Commissioner is reversed and remanded. This remand is a "sentence four" remand within the meaning of 42 U.S.C. § 405(g) and

---

[2] Finding merit in Treon's fourth and fifth claims, it is unnecessary to examine the other assertions of error.

*Melkonyan v. Sullivan*, 501 U.S. 89 (1991).

    IT IS SO ORDERED this 28th day of June, 2017.

                                                                                                _____
                                                                                                UNITED STATES MAGISTRATE JUDGE